# South and North Ala. Railroad Co. *v.* McLendon.

*Action for Damages against Railroad Company.*

1. *Measure of damages.*—In an action on the case to recover damages for a private and personal injury caused by a nuisance, each day's continuance of the nuisance being an independent cause of action, there can be, generally, no recovery for injury suffered after the commencement of the suit; but, when the action is brought for an injury to the person, caused by a negligent or wrongful act not continuous in its nature, for which but one action can be maintained, the plaintiff may recover compensation for the disabling effects of the injury, prospective as well as past.

2. *Same* —In such action, to recover damages for an injury to the person, the jury may, in estimating the damages, consider the expenses of the cure; and the proper cost of future treatment or nursing, when the injury is permanent or irremediable; and the loss of time up to the verdict; and probable future loss, or incapacity to do as profitable labor as before; and suffering, mental and physical, proximately caused by the injury

3. *Exemplary damages.*—In an action against a railroad company, to recover damages for personal injuries caused by the failure and neglect to keep in proper repair a bridge over a public highway, the plaintiff may recover exemplary or punitive damages, if the negligence was gross; and the degree of negligence is a question for the determination of the jury, under proper instructions from the court.

4. *What is negligence.*—To render a railroad company liable for damages, on account of personal injuries caused by its failure and neglect to keep in repair a bridge across a public highway, it is not necessary to show that the company had knowledge of the defect in the bridge: it is its duty to exercise watchful diligence in keeping the bridge in repair, and it is chargeable with knowledge of every defect which such diligence would have discovered.

5. *To what plaintiff, as witness, may testify* —The plaintiff, testifying as a witness to her personal injuries, may state, "In consequence of loss of time, and physical disability from the injuries, she had been prevented from earning money by her labor, and had been injured fifty dollars within the four months next after the fall, in consequence of the hurts caused by the fall." This, in substance, is an assertion that her labor during that time would have been worth fifty dollars.

6. *To what witness may testify.*—The following expressions, used by a witness testifying as to the personal injuries received by the plaintiff, "though awkwardly expressed sometimes, are, at most, conclusions of fact," and are not improperly allowed: "Plaintiff *seemed to be suffering*" the day after the injury; "she *was not able* to return home" on that day; "*was not able to use her arm* a large part of the time for several months;" "when she returned home,"

[South and North &labama Raileoad Co. v. McLendon.]

on the second day after the injury, "she *looked bad,* and *her left wrist looked like the bone* had slipped off the joint;" "she *was disabled* by the fall," &c.

7. *Charge on facts conceded.*—The court may charge without hypothesis on facts which are conceded: such a charge is not an invasion of the province of the jury.

8. *General exception to charge.*—A general exception to an entire charge, consisting of several distinct propositions, may be overruled entirely: the objectionable clause or portion should be specified and clearly pointed out, so that the attention of the court and the opposing counsel may be drawn to the supposed error.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. WM. L. WHITLOCK.

This action was brought by Mrs. Sarah McLendon against the appellant, a corporation chartered under the laws of Alabama, to recover damages on account of personal injuries sustained by her while crossing a bridge on the public road between Calera and Elyton, at a place where the track of the railroad crossed the public road; the injury being caused by the horse, which the plaintiff was riding, falling through the rotten planks of the bridge, and throwing her heavily to the ground; and the defendant being bound to keep the bridge in repair, it being built across a ditch which had been dug to carry off the water from the side of the railroad. The injury occurred on the 21st August, 1877; and the action was commenced on the 5th January, 1878. The record does not show what pleas were filed.

On the trial, as the bill of exceptions states, the plaintiff was examined as a witness for herself, and thus testified: "On the 21st August, 1877, she and her daughter, Mrs. Sarah. Moore, were riding on horseback along the public road leading from Calera to Elyton, which crosses the track of the South and North Alabama railroad; said railroad having been built across said public road one half mile north of the depot called Whiting, which is in Shelby county. Plaintiff and Mrs. Moore approached said railroad from the eastern side, to cross at said crossing. At this crossing, there is a ditch on each side of the railroad, three feet deep, and several feet wide, which had bridges over them covered with plank, and which had been dug by the defendant to drain the railroad track; the bridges being built by the defendant on its right of way. When plaintiff and Mrs. Moore approached the bridge over the ditch on the eastern side of the railroad, they rode abreast upon the bridge, and the fore-feet of plaintiff's mare broke through the bridge, and the fore-legs of the mare, up to her breast, went through the bridge, and her body and nose struck the bridge; and the plaintiff was thrown from her. The falling of the mare's feet through the bridge was caused by the breaking of the plank which

formed the covering of the bridge, and which was decayed. Witness did not remember whether one plank broke entirely, its full width, or whether two plank were broken part of their width. By being thrown from the mare, plaintiff was thrown across the track of the railroad, and struck the end of the bridge on the opposite side of the road; and her left wrist, left arm and shoulder, and left side were injured and bruised, her wrist and shoulder being dislocated; her face was hurt, and she suffered great pain and loss of sleep, for three or four months, from these injuries. During the time she was suffering from these injuries, plaintiff *was in great fear that her arm would have to be amputated.*" "During the time she was suffering from these injuries, *she supposed that she never would recover from the injuries.*" "Plaintiff testified, also, *that she had suffered continuously from the injuries, from the time she received them, up to the time of the trial, and was suffering from said injuries at the time of the trial.*" "At the request, and under the direction of her counsel, *plaintiff showed her left wrist to the jury, and called their attention to a knot on the left side of the joint,* indicating partial dislocation of the joint." "Plaintiff testified, also, *that she had been materially injured by the hurts caused by the fall, which prevented her from earning money by her labor, as she did before the injuries were received;*" "that she had been disabled by the said injuries, *so as to make considerable difference between her ability to do labor before she received the injuries, and her present ability to labor;*" "also, *that in consequence of loss of time, and physical disability from the injuries she had received, she had been prevented from earning money by her labor, and she had been injured fifty dollars, within the four months next after her fall from the mare, by reason and in consequence of the hurts caused by the fall from the mare.*" To the several italicized portions of this evidence, the defendant objected, and reserved an exception to the overruling of each separate objection.

Mrs. Sarah Moore, the plaintiff's daughter, who was riding with her at the time the accident occurred, was examined as a witness for plaintiff, and described the accident substantially as plaintiff had described it; and she further testified as follows: "Plaintiff's left hand, wrist, arm and shoulder, and her left side, and her face were hurt by the fall. After resting about an hour at the bridge, plaintiff and witness went to Mrs. Griffin's on the day the accident occurred (Tuesday), and remained there during Wednesday, and returned to the residence of plaintiff on Thursday. *The plaintiff seemed to be suffering during the time she remained at Mrs. Griffin's.*" "*Plaintiff was not able to return from Mrs. Griffin's on Wednesday to her own residence.*" "*There is quite a differ-*

*ence in the condition of the plaintiff, before she fell from the mare at the bridge, and since that time.*" "*Plaintiff was not able to use her arm a large portion of the time, for several months after her said fall.*" To each separate portion of this testimony which is italicized, the defendant objected, and reserved an exception to the overruling of each separate objection. Mrs. Bailey, another witness for the plaintiff, testified that, "when plaintiff returned from Mrs. Griffin's on Thursday, after falling from the mare on Tuesday, *her left wrist looked like the bone had slipped off the joint;*" also, "that plaintiff, when she returned from Mrs. Griffin's, *looked bad;*" also, "that the plaintiff *was disabled by the fall from the mare.*" To each separate portion of this testimony, as italicized, the defendant objected, and duly excepted to the overruling of each objection.

Thomas Bailey, another witness for the plaintiff, testified, "that he crossed the railroad track two or three times a week, for several years, at the place where the mare fell; that there was a hole in the bridge on the east side of the railroad, for several weeks before the 21st August, 1877, which hole was sometimes open, and sometimes closed by a piece of plank laid over it; to which the defendant objected," and duly excepted to the overruling of the objection. John Ozley, another witness for the plaintiff, who was the overseer of the public road at the crossing where the accident occurred, testified that, "between the 20th and 30th July, 1877, there were two holes in the bridge on the east side of the railroad, each one being about six inches in width;" to which statement objection was made, and exception duly reserved by the defendant. William McLendon, another witness for the plaintiff, "testified that, a few days before plaintiff fell from the mare, there was a hole in the said bridge three or four feet long;" to which statement, also, the defendant objected, and duly reserved an exception to the overruling of the objection.

"The court charged the jury, of its own motion, that if they attained the conclusion that the plaintiff's mare fell through the bridge; and that the bridge was on the defendant's right of way, and was built by defendant; and that said fall was caused by the negligence of the defendant to keep said bridge in a condition which was safe to persons travelling along the said public dirt road; and that she was thrown from her mare by said fall, and was injured by having been so thrown from her mare; then she was entitled to recover a reasonable compensation for all the actual and consequential damages which resulted from such injury or injuries; such as, the expense of her cure, the value of time

lost by reason of the injuries, a fair compensation for her physical and mental suffering caused by the injuries, as well as for any permanent reduction of her ability to earn money, so far as the same was caused by such injuries.

"The court charged the jury, also, of its own motion, that if the plaintiff was injured, and the injury was caused by the negligence of the defendant, then she was entitled to recover not only the amount of damages which she suffered prior to the commencement of the suit, but also all damages proceeding continuously from the injuries complained of, which she has suffered up to the trial, and which it is reason-ably certain she will suffer in the future, as a consequence of said injuries."

The defendant excepted to each of these charges as given, and requested the court to give the following charges, which were in writing: 1. "If the jury believe, from the evidence, that the plaintiff is entitled to recover in this action, then, in estimating the damages, they can only take into consider-ation the actual damages done to plaintiff; and she can not recover for vindictive or exemplary damages in this action." 2. "That to find a verdict against the defendant in this case, the negligence, if any, must be brought home to the defend-ant—that is to say, to its president, directors, or general superintendent." 3. "If the jury believe that the defendant had no knowledge of any deficiency in the crossing (?) and upon the question whether or not the defendant was negli-gent in not using proper diligence in respect thereto, and that for the want of diligence, or by reason of such negli-gence, they were not informed of the deficiency if there was any—that the question is one of diligence or not, and the defendant can be charged, if at all, only on the ground of its own negligence, or want of diligence, and such (?) must ap-pear in order to charge the defendant; and unless such knowledge is shown, the plaintiff can not recover in this action." The court refused each of these charges, and the defendant duly excepted to their refusal.

The charges given by the court, the refusal of the several charges asked, and the numerous rulings on questions of evi-dence to which exceptions were reserved as above stated, are now assigned as error.

J. T. HEFLIN, S. F. RICE, and THOS. G. JONES, for appellant. 1. The court erred in overruling the several objections to the plaintiff's own testimony as a witness.—*Johnson v. The State,* 17 Ala. 618; *Gassenheimer v. The State,* 52 Ala. 317; *Oxford Iron Co. v. Spradley,* 51 Ala. 171; *Barbour County v. Horn,* 48 Ala. 566; *Polly v. McCall,* 37 Ala. 30; *Herrick v. Lapham,*

10 John. 281; *Andrews & Brother v. Jones*, 10 Ala. 460; *Jones v. Donnell*, 13 Ala. 511; *M. & W. P. Railroad Co. v. Varner*, 19 Ala. 185, and authorities cited in opinion.

2. Whatever latitude may be allowed to the plaintiff, when testifying as a witness to her injuries and feelings, other witnesses should have been confined to a statement of facts; but their testimony, as admitted by the court, against the objections of the defendant, was either the statement of a conclusion from facts, or the expression of an opinion; and sometimes a statement of the very fact, or conclusion, which it was the duty of the jury to determine.— *Gassenheimer v. The State*, 52 Ala. 317; *Johnson v. The State*, 17 Ala. 618; *Walker v. Walker*, 34 Ala. 473; *Corley v. The State*, 28 Ala. 24; *P. & M. Bank v. Borland*, 5 Ala. 531; *Peake v. Stout*, 8 Ala. 647; *Whetstone v. Branch Bank*, 9 Ala. 875; *Clement v. Cureton*, 36 Ala. 120; *Nuckolls v. Pinkston*, 38 Ala. 615; 1 Greenl. Ev. §§ 98-100; *Railroad Co. v. Varner*, 19 Ala. 185.

3. In this action, prospective damages could not be recovered.— *Stein v. Burden*, 24 Ala. 147; *Polly v. McCall*, 37 Ala. 30; *Duncan v. Markley*, 1 Harper's Law, 276.

4. Each of the charges given by the court, *ex mero motu*, invaded the province of the jury, in assuming that the accident occurred on a " public dirt road." When the testimony is oral, even though it be clear and undisputed, its credibility must be referred to the jury, and can not be assumed by the court.— *Stewart v. Russell*, 38 Ala. 19; *McKenzie v. Br. Bank*, 28 Ala. 611; *Corley v. The State*, 28 Ala. 24; *Foust v. Yielding*, 28 Ala. 658; *Herges v. The State*, 30 Ala. 45; *Davidson v. Woodruff*, at present term. The second affirmative charge is objectionable, also, because it makes the defendant's liability depend upon two questions of fact only, and ignores every other element of the plaintiff's right of recovery. *Holmes v. The State*, 23 Ala. 17; *Rowland v. Ladiga*, 21 Ala. 10. This charge is errroneous, also, in saying that " all damages proceeding," &c., may be recovered; while the law says, that the damages must be the natural and proximate result of the injury. The true rule as to damages is stated in the case of *Milwaukee & St. Paul Railroad Co. v. Arms*, 91 U. S. R. 495.

HARGROVE & LEWIS, and WILSON & WILSON, *contra*.—1. It is the duty of railroad companies to restore roads, bridges, &c., with which they have interfered, to such condition as will not impair their usefulness. --Shear. & Redf. on Negligence, § 452, notes 1, 2, 3 ; §§ 357-8, note 2. When the owner of land, over which a public road passes, digs a race-way across the road, and builds a bridge over it, he is liable for

damages arising from the imperfection of the bridge.—Waite's Actions and Defenses, vol. 1, p. 732, and cases cited; 6 Johns. 90; 4 Pick. 341.    When it is the duty of any person, or of any corporation, to keep a bridge in repair, damages may be recovered against him or it by any person sustaining injuries by the neglect of that duty.—Waite, *supra*, p. 732. That railroad companies are liable for injuries resulting from the dangerous state of highways crossed by their works, see Redfield on Railroads, vol. 1, p. 420.

2. As to damages, and the measure thereof, see *Holyoke v. Grand T. P. Company*, 48 N. H. 541; Sedgwick on Damages, 703.    In an action for personal injuries, caused by negligence, the plaintiff can recover the expense of his cure, and a fair compensation for his sufferings, physical and mental, caused by the injury, as well as for any permanent reduction of his capacity to earn money.—Shear. & Redf. on Negligence, § 606, notes 3 and 4, on pages 684-5.    The recovery is not limited to damages up to the commencement of the action, but may include damages up to the rendition of the verdict, and future damages which it is reasonably certain that he will suffer.—*Ib.* § 597, note 3.

3. That exemplary damages may be recovered against a railroad company, in such an action as this, see Field on Damages, §§ 80-85; *Goddard v. Grand Trunk Railroad Co.*, 57 Maine, 202; *Ashcraft v. Railroad Co.*, 48 Ala. 15; *Cooper v. Mullins*, 30 Geo. 146; Shear. & R. on Negligence, § 600.

STONE, J.—An action on the case is the proper remedy for a personal injury, not directly produced, but consequent on the negligent conduct of another. It is equally the remedy for a nuisance, causing individual wrong, which is the consequence of some unauthorized act or omission of another. There is this wide difference in the two classes of cases : In the former, the tort or wrong, from which the injury results, expends its force and vitality at once, and there is no repetition or continuance of the wrongful act, although the injurious consequence complained of may be of lasting duration. A nuisance is a continuing wrong, each day of which, being an independent wrong, furnishes an independent cause of action.    On this account, the rule and measure of recovery in the two classes of cases is essentially different.    In most actions for injuries caused by a nuisance, there can be no recovery for injury suffered after commencement of the suit; for such injury, being a new and independent nuisance, will support another action.    But, when the injury is to the person, and the wrong which causes it is not continuous in its nature, then there can be but one action for its redress,

no matter how permanent or lasting the disability, pain or suffering may be. Hence, in such action, the party injured may recover in one and the same suit compensation for the disabling effects of the injury, whether past or prospective. In estimating the damages, the jury may consider the expenses of the cure; and if the injury is permanent or irremediable, or will require future treatment or nursing, the proper costs of this may be added. And the loss of time up to the verdict, and probable loss, or incapacity to do as profitable labor, in the future, and physical and mental suffering proximately caused by the injury, are, when established to the satisfaction of the jury, pertinent and legitimate factors in making up the sum of the damages which the jury may award to the plaintiff.—*Barbour Co. v. Horn*, 48 Ala. 566, 577; 2 Redf. on Railways, § 199, par. 9; *Stein v. Burden*, 24 Ala. 130; *Polly v. McCall*, 37 Ala. 20; 2 Greenl. Ev. § 267; *Pym v. Gr. Northern Railway Co.*, 2 Best & Smith, Q. B. 759; *Fair v. London & N. W. Railway Co.*, 21 L. T. Rep. 326; Sanders on Negligence, 237; *Snedicor v. Davis*, 17 Ala. 472.

3. Another important inquiry in this case is, can there, in this form of action, be a recovery for an amount beyond the actual injury sustained, measured by a pecuniary standard, or can the jury give exemplary, or punitive damages? And if the latter, under what conditions can they be imposed? In *Barbour County v. Horn*, 48 Ala. 577, which was an action on the case for injury to the person, caused by negligently permitting a public bridge to remain out of repair, or for not requiring a proper bond from the builder of the bridge, this court first pronounced that the complaint was insufficient, and that there could be no recovery upon it as it then stood. Supposing the complaint might be amended, the court proceeded to discuss the question of the measure of damages, and said, "In such a case as this, there can be no vindictive damages." The opinion does not disclose why there could be no vindictive damages in that case. We do not think it was the intention of the court to affirm, that vindictive damages can in no case be recovered, for an injury caused by the negligence of another; for, in the same opinion, it is said, "Where there is no malice connected with the wrong complained of, or such gross negligence, or oppression, or fraud as amounts to malice, the compensation, or amount of damages, should be confined to the actual injury and its immediate effects upon the person of the plaintiff, when the action is for harm to the person, which seems to be the case here." We suppose the meaning of the court was, that the very nature of the charge of negligence, imputed to the county

in that case, repelled all idea of gross negligence, and, therefore, there could be no vindictive damages.

In Sedgwick on Damages, 3 ed., 477, it is said:. "Where gross fraud, malice, or oppression appears, the jury are not bound to adhere to the strict line of compensation, but may, by a severer verdict, at once impose a punishment on the defendant, and hold up an example to the community." In a note, many authorities are cited in support of this principle. For an injury resulting from mere negligence, only compensation can be recovered. But, when the negligence is so gross as to show willfulness, wantonness. or recklessness, or a grossly careless disregard of the safety and welfare of the public, then punitive or exemplary damages may be awarded, in the sound discretion of the jury.

In *Day v. Woodworth,* 13 How. U. S., Justice GRIER said : "It is a well established principle of the common law, that in actions of trespass, and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offense, rather than the measure of compensation to the plaintiff. . . By the common, as well as by statute law, men are often punished for aggravated misconduct, or lawless acts, by means of a civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured."

*Vicksburg and Jackson Railroad v. Patton,* 31 Miss. 156, was an action against the railroad company for killing cattle, the property of plaintiff, through the negligence and inattention of the employees of the railroad, the bad condition of the track and the rolling stock, and the insufficiency of the appliances for speedily stopping the train. There was a recovery beyond the value of the cattle killed. The court said : " The question of gross negligence, or wanton mischief, was distinctly submitted to the jury, and was a material part of the case ; and whether we consider it with respect to the bad condition of the track, and the absence of appliances and fences necessary for its safe operation, or the unfitness and recklessness of the engineer, it is plain that the jury were at liberty from the evidence to find that the injury was occasioned, either by the gross neglect of the company, or the wanton mischief of the engineer. That was a question which they had the right to determine; . . . and it is immaterial whether the jury thought there was gross neglect, or willful mischief. The rules above stated apply equally to either state of the case, and would warrant the jury in finding exemplary damages, if the circumstances of neglect or aggravation tended to justify it, and they thought fit to

award it." And the court quoted approvingly the language of Lord DENMAN in *Lynch v. Nurdin*, 1 Q. B. 29 : "Between willful mischief, and gross negligence, the boundary line is hard to trace : I should should rather say, impossible. The law runs them into each other, considering such a degree of negligence as some proof of malice." See, also, *Sav. & Memphis R. R. Co. v. Shearer*, 58 Ala. 672, 680 ; *S. & N. R. Co. v. Sullivan*, 59 Ala. 272. We hold, there is no inflexible rule, which denies to plaintiffs, injured by the negligence of another, all right to claim punitive, exemplary, or vindictive damages, or smart money, as it is severally phrased in the law-books. It depends on the degree of the negligence, whether simple or gross ; and the jury are judges of the degree, under proper instructions from the court ; and the application of the rule must always depend, more or less, on the circumstances of the case.—Shearman and Redf. on Neg. § 600 ; 2 Redf. on Railways, § 199, par. 9 ; *Roberts v. Heim*, 27 Ala. 678.

4. The first charge asked by the defendant, was rightly refused. It assumes, as matter of law, that there can be no recovery beyond the actual injury sustained. It should have been left to the jury to say whether or not the negligence was gross. If it was, the jury, in their prudent discretion, were permitted to go beyond the boundary of mere compensation. The second and third charges asked assert the proposition, that the defendant corporation can not be held liable for the injury, unless knowledge of the defect in the bridge was brought home to it. This is not the rule. The corporation should have employed watchful diligence in keeping the bridge in proper repair ; and is charged with a knowledge of every defect such diligence would have discovered. If the testimony be believed, the defect which caused the injury complained of, was plainly patent. Charges 2 and 3 were properly refused ; and the general charge given by the court of its own motion is in accordance with the views expressed above, and is free from error.

5-6. Some of the answers of the witnesses are clumsily expressed ; but, properly construed, we think they are free from error. We note the following : "In consequence of loss of time, and physical disability from the injuries, she had been prevented from earning money by her labor, and she had been injured fifty dollars within the four months next after the fall from the mare, by reason of and in consequence of the hurts caused by the fall from the mare." This is, in substance, an assertion that her labor, during that time, would have been worth fifty dollars.—*Parker v. Parker*, 33 Ala. 459. "The plaintiff seemed to be suffering during the

time she stayed at Mrs. Griffin's." This was the day after the injury. "The plaintiff was not able to return from Mrs. Griffin's on Wednesday, to the residence of plaintiff." The fall and injury were on Tuesday. "That plaintiff was not able to use her arm a large part of the time for several months after she fell from the mare at the bridge." "That when the plaintiff returned from Mrs. Griffin's, on Thursday, after falling from the mare on Tuesday, the left wrist of plaintiff looked like the bone had slipped off the joint." "That when plaintiff returned from Mrs. Griffin's, she looked bad." "That plaintiff was disabled by the fall from the mare." All these are but facts, or, at most, conclusions of fact; awkwardly expressed sometimes, it is true; still, we find in them nothing to which a witness may not testify. *Bennett v. Fail*, 26 Ala. 605; *Wilkinson v. Mosely*, 30 Ala. 562; *Milton v. Rowland*, 11 Ala. 732; *Fountain v. Brown*, 38 Ala. 72; *Barker v. Coleman*, 35 Ala. 221; *Stone v. Watson*, 37 Ala. 279. "The true line of distinction is this: an inference, necessarily involving certain facts, may be stated without the facts, the inference being an equivalent of a specification of the facts: . . In other words, when the opinion is the mere short-hand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based."—Whar. Ev. § 510; *Raisler v. Springer*, 38 Ala. 703; *Avary v. Searcy*, 50 Ala. 54.

7-8. The general charge is made up of several propositions. There was a general exception to the whole of it, without indicating any particular part as objectionable. It is here urged, that one clause is faulty, in that it assumed the road crossing the railroad, on which the injury was suffered, was "a public dirt road," without submitting that inquiry to the jury. We incline to think this was a fact so proved as to be one of the conceded facts in the case, upon which the court was authorized to charge without hypothesis.—*Kirkland v. Oates*, 25 Ala. 465. But the exception was not sufficiently specific. It should have clearly pointed to the clause objected to, so that the court might have the opportunity to set itself right, or that opposing counsel might consent to its withdrawal, or modification.—1 Brick. Dig. 342, § 99; *Johnson v. McGehee*, 1 Ala. 186; *Irvin v. The State*, 50 Ala. 181; *Trenier v. Stewart*, Sup. Ct. U. S., October term, 1879.

If the damages in this case are excessive, the remedy is not with us. Complaint is frequently heard, that juries assess excessive damages against railroads. It is to be hoped such complaints are unfounded. While railroads should be managed with great skill and circumspection,

[Hames v. Brownlee.]

because of the immense peril of their unskillful or negligent handling, they should not, for their derelictions, be mulcted more heavily than individuals would be for similar faults in matters of like magnitude.—See *Tanner v. Louisville & Nashville Railroad*, 60 Ala. 621.

The judgment is affirmed.