# Woodstock Iron Company *v.* Reed and Partlow.

### *Action for Breach of Contract.*

1. *Contract for cutting timber and converting it into coal; partial loss by fire; set-off.*—Under a verbal contract, by which plaintiffs undertook to cut a large quantity of standing timber for defendant, and to convert it (with wood already cut and corded) into coal, at a stipulated price per hundred bushels; and defendant agreed to advance fifty cents per cord for the cutting and cording, to be reimbursed by withholding from the price paid on delivery of the coal; part of the corded wood having been destroyed by fire, after which plaintiffs sued for the agreed price: *held,* that as to the standing timber which had been cut and corded, the defendant was entitled to retain the fifty cents per cord which he had advanced, for so much as was burned; that as to the wood already corded when the contract was made, if the dominion of all of it passed at once to plaintiffs by the contract, defendant was entitled to retain for so much as was burned, but otherwise for only that part of which plaintiffs had taken possession, actual or constructive; and that the demand was available under the plea of set-off.

2. *Production of books or papers on notice.*—When papers are produced on notice, but are not used or examined by the party calling for them, it is not error to refuse to allow the party producing them to use them in evidence, under the facts disclosed by the record in this case.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. LEROY F. BOX.

The appellees, Reed and Partlow, sued the appellant, "The Woodstock Iron Company," for an alleged breach of an oral contract. The complaint contained three counts, the *first* and *second* of which were, respectively, on an account stated and for work and labor done, and the third was a special count on the contract as testified to by the plaintiffs. The pleas were *non assumpsit*, payment, and set-off. The material facts of the case are stated in the opinion.

The plaintiffs introduced in evidence certain portions of two books belonging to the defendant, containing a statement of an account against the plaintiffs for the cutting of the wood, and a statement of the coal delivered to defendant by the plaintiffs under the contract between them, which books, with others, had been brought into court under a *subpœna duces tecum*, issued at the instance of plaintiffs to Samuel Noble, secretary and treasurer of the defendant. The defendant offered to read in evidence from the wood-ledger and other books, which had been produced under

said *subpœna*, but had not been offered in evidence by the plaintiffs, for the purpose of showing the entire statement of account, both credit and debit, between plaintiffs and defendant, with respect to their contract. The plaintiffs objected to this evidence; the court sustained the objection, stating that the defendant must first offer evidence showing that the books were defendant's books, and the defendant excepted.

The defendant also offered to read in evidence the deposition of Alfred L. Tyler, the president of defendant, which had been taken by plaintiffs under interrogatories propounded to the defendant under § 3084 of the Code of 1876, and which contained a complete statement of the account between plaintiffs and defendant with respect to their contract. The court, on the objection of plaintiffs, excluded this evidence, and the defendant excepted.

The court, at the request of the plaintiffs, gave the following charge, among others, not necessary to be set forth : "There is no evidence in the case to support the plea of set-off introduced by the defendant." The defendant excepted to this charge.

CALDWELL, HUMES & CALDWELL, for the appellant, cited, on the question of set-off, *Scott v. Rivers*, 1 Stew. & Port. 23; *Waters v. Spencer*, 22 Ala. 460; *Stanley v. Nelson*, 28 *ib.* 514; *Hollingsworth v. Martin*, 23 *ib.* 591; *King v. Pope*, 28 *ib.* 601. As to the introduction of the books, *Stetson v. Lyons*, 34 Ala. 140.

PARSONS, PEARCE & KELLY, *contra.*—1. The court did not err in refusing to allow the defendant to read from the "wood ledger and other books."—1 Green. Ev. (14th Ed.), §§ 117 (note a, *et seq.*), 119, 120 ; *Frye v. Barker*, 2 Pick. 65 ; *Tyler v. Tucker*, 1 Kelly, 233. 2. The charge given was correct. There was no evidence showing, or tending to show, that plaintiffs owed the defendant any distinct debt unconnected with their transactions under the contract sued on ; hence, there was no evidence to support the plea of set-off.—Abbot's Law Dic. ; Bouvier's Law. Dic. ; 2 Parsons on Contracts, 880 ; Warterman on Set-off, § 1, *et seq.; Avery v. Brown*, 31 Conn. 398 ; *Washington v. Timberlake*, 74 Ala. 263 ; § 2991 Code of 1876.

STONE, C. J.—The present action counts on the alleged breach of an oral contract. The two plaintiffs, Reed and Partlow, each testified as to the terms of the contract. Noble, secretary and treasurer of the Woodstock Iron Company,

also testified to what he said were the terms of the contract. The different versions are not entirely in harmony. The following is a synopsis of the facts and the terms of the contract, according to Noble's testimony :

The Woodstock Iron Company owned a tract of land, or the timber on it, of about eighty acres. On it were about two thousand cords of wood, ready cut and corded, and there was also standing timber on the tract that had not been cut. It was estimated that the timber on the tract—that cut and corded and that standing—would produce about one hundred thousand bushels of coal. The general estimate is that three cords of wood will yield one hundred bushels of coal. According to the testimony of this witness, the agreement was that Reed and Partlow would take the land and the timber as it was, fell and cord the standing timber, and the Woodstock Iron Company was to advance for Reed and Partlow fifty cents per cord, to pay for felling and cording the standing timber. Reed and Partlow were to have the standing timber felled and corded, convert the whole into coal, and deliver it to the Woodstock Iron Company, so many hundred bushels a day, and were to be paid for the coal at the rate of five 75-100 dollars per hundred bushels ; but the iron company was to withhold one dollar and fifty cents of every five 75-100 dollars, to reimburse it for the money paid for cutting and cording the wood. And this witness testified that the iron company paid for cutting and cording the wood according to this agreement, and charged the payments so made to Reed and Partlow. The contract was made about March 1, 1883.

The material difference between the testimony of Noble given above, and that of Reed and Partlow, is, that the latter do not say they were to have the standing timber cut. Their statement is, that they were to burn the wood into coal, and deliver it at five 75-100 dollars per hundred bushels, allowing the iron company to retain of the five 75-100 dollars, one and a half dollars for each hundred bushels delivered, to pay for cutting and cording the same. The testimony of these witnesses corresponds with the averments of the third count of the complaint.

About the last of August a fire broke out in the coaling grounds and destroyed a large quantity of the corded timber, before it was burnt into coal; and the real question in this case is, which party shall lose the fifty cents per cord for cutting the timber, which was destroyed by the fire.

If the testimony of Noble be believed, there can be no question that to the extent the timber was cut and corded after the contract was made, and the labor so employed was

[Woodstock Iron Co. v. Reed & Partlow.]

paid for, or assumed by the Woodstock Iron Company, the contractors, Reed and Partlow, became liable to pay the company therefor at the rate of fifty cents per cord. And, to this extent, if any of the cord wood thus circumstanced was destroyed by the burning, the loss must fall on Reed and Partlow. And such claim is a good defense under the plea of set-off.—*Gibson v. Marquis*, 29 Ala. 668. The Circuit Court erred in charging the jury, "there was no evidence in the case to support the plea of set-off."

In considering the question raised above, the inquiry is not as to the ownership of the timber before it was burned into coal. The true inquiry is, who was to have the timber cut? If that duty rested on Reed and Partlow—if they were to contract for and look after the cutting—and the agreement of the iron company was simply to advance for them to pay the laborers, and it did so advance, then the question is the simple one of money paid for another at his request, and *indebitatus assumpsit* will lie to recover it back. Such claim is a valid set-off. In other words, if Reed and Partlow undertook the entire service from the standing timber to the delivered coal at five 75-100 dollars per hundred bushels, and the iron company was to advance and did advance to pay the wood-cutters, with an agreement that it should withhold one and a half dollars of the agreed price for every hundred bushels delivered, as a means of reimbursing itself, then as to the timber cut after the contract was made, and destroyed by fire, the set-off should be allowed.

The timber cut and corded before the contract was made stands on a different principle. The inquiry as to this is delivery *vel non*. If by the terms of the agreement the control and dominion of the corded timber passed at once to Reed and Partlow, and if their contract was to do the entire service on the basis of five 75-100 dollars per hundred bushels, then they are accountable at the rate of fifty cents per cord for any of that timber that may have been destroyed. If, on the other hand, their dominion and possession was to date only from the time they took actual possession for the purpose of converting it into coal, then they would not be liable for any such timber they had not actually interfered with. Any actual interference, however, would amount to a taking of possession, and consummate the delivery; and in such event, or in either such event, the corded timber would stand in the same category as the timber that was standing when the contract was made. The testimony as to the corded timber is not very full or satisfactory.

The record does not contain enough to show the Circuit

[Brent v. Miller & Co.]

Court erred in refusing to allow defendant to read to the jury from the books it had produced on notice served. *Stetson v. Lyons*, 34 Ala. 140 ; 1 Greenl. Ev. § 571 ; *State v. Wisdom*, 8 Por. 511 ; *Tarlton v. Goldthwaite*, 23 Ala. 346 ; *Ward v. Reynolds*, 32 Ala. 384.

Reversed and remanded.